United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUITA BAHRAMIPOUR, on behalf of herself, the general public, and all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>CITIGROUP GLOBAL MARKETS, INC. formerly known as SALOMON SMITH BARNEY,<br><br>    Defendant.<br>_____/ | No. C 04-4440 CW<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

    Defendant Citigroup Global Markets, Inc. moves for partial summary judgment of the first cause of action brought by Plaintiff Guita Bahramipour under the California Unfair Competition Law, Bus. & Prof. Code § 17200 et seq. (UCL), based upon violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 200 et seq. Plaintiff seeks to recover restitutionary damages for any of Defendant's wage and hour violations which fell within the UCL's four-year statute of limitations.  Plaintiff also indicates that she will move to certify an "opt-out" class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Defendant argues that the four-year statute of limitations and the "opt-out" class certification procedure sought by Plaintiff in her UCL claim are preempted by the FLSA and,

United States District Court
For the Northern District of California

alternatively, that Plaintiff's UCL remedies should be limited to those available under the FLSA. Plaintiff opposes this motion. The matter was heard on December 2, 2005. Having considered all of the papers filed by the parties and oral argument, the Court DENIES Defendant's motion.

## BACKGROUND

On September 16, 2004, Plaintiff, a former securities broker for Defendant, filed a class action suit in State court, alleging that Defendant engaged in various illegal pay practices. Plaintiff's first cause of action alleges that Defendant misclassified securities brokers as "exempt" employees under the FLSA, thereby denying them overtime pay in violation of the FLSA, which constitutes unfair competition under the UCL. On October 20, 2004, alleging federal question jurisdiction under 28 U.S.C. § 1331, Defendant removed the action to federal court pursuant to 28 U.S.C. § 1441. On October 28, 2005, Defendant moved for partial summary judgment.

## DISCUSSION

I.   Legal Standard

A.   Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

1     The moving party bears the burden of showing that there is no
2 material factual dispute.  Therefore, the court must regard as true
3 the opposing party's evidence, if supported by affidavits or other
4 evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815
5 F.2d at 1289.  The court must draw all reasonable inferences in
6 favor of the party against whom summary judgment is sought.
7 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
8 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d
9 1551, 1558 (9th Cir. 1991).

10    B.   Preemption

11    Under the Supremacy Clause, State law that conflicts with
12 federal law has no effect.  <u>Cipollone v. Liggett Group, Inc.</u>, 505
13 U.S. 504, 516 (1992) (citing U.S. Const. art. VI, cl. 2).  Federal
14 preemption of State law may be express or implied.  <u>Shaw v. Delta
15 Airlines, Inc.</u>, 463 U.S. 85, 95 (1983).  Absent explicit preemptive
16 language, there are two types of implied preemption: field
17 preemption and conflict preemption.  <u>Crosby v. Nat'l Foreign Trade
18 Council</u>, 530 U.S. 363, 372 (2000).

19    Where Congress has not entirely displaced State regulation in
20 a specific field, "State law will still be preempted to the extent
21 that it actually conflicts with federal law."  <u>Pac. Gas & Elec. Co.
22 v. State Energy Res. Conservation & Dev. Comm'n</u>, 461 U.S. 190, 204
23 (1983).  There are two reasons courts will find State law conflict-
24 preempted.  First, State law will be conflict-preempted where it is
25 "impossible for a private party to comply with both state and
26 federal requirements."  <u>English v. Gen. Elec. Co.</u>, 496 U.S. 72, 79
27 (1990).  Second, State law will be conflict-preempted where that

3

law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

Congressional intent is the "ultimate touchstone" of any preemption analysis, express or implied. Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 96, 98 (1992). In determining Congressional intent to preempt, a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose," Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992), because "[t]he first and most important step in construing a statute is the statutory language itself." Royal Foods Co., Inc. v. RJR Holdings, Inc., 252 F.3d 1102, 1106 (9th Cir. 2001) (citing Chevron USA v. Natural Res. Def. Council, 467 U.S. 837, 842-44 (1984)).

There is a presumption against implied preemption of State law in areas traditionally regulated by the States. California v. ARC Am. Corp., 490 U.S. 93, 101 (1989). In addressing the question of preemption in a field traditionally occupied by the States, a court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)); Hillsborough County Florida v. Automated Med. Lab, Inc., 471 U.S. 707, 715 (1985). "In other words, we are not to conclude that Congress legislated ouster of [a State] statute . . . in the absence of an unambiguous congressional mandate to that effect." Florida Lime

and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 146-47 (1963).

## II. The UCL and the FLSA

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under State law. Chabner v. United Omaha Life Ins. Co, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, State, or local law may serve as the basis for a UCL claim. Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838-38 (1994).

In 1938, finding that the existence of labor conditions "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" burdened interstate commerce, Congress passed the FLSA. 29 U.S.C. § 202(a). Absent an exclusion for "exempt" employees, the FLSA requires employers to pay employees overtime at the rate of one-and-one-half times their normal pay. 29 U.S.C. § 207(a)(1). The original provision had no statute of limitations and courts applied varying statutes of limitation borrowed from the States in which claims were brought. Arrington v. Nat'l Broad. Co., 531 F. Supp. 498, 500-502 (D.D.C. 1982) (discussing history of the Portal-to-Portal Act).

In 1947, in response to the Supreme Court's decision in Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 692 (1946) (extending compensable "work" under the FLSA to preliminary activities of the employee, regardless of contrary custom or contract), Congress passed the Portal-to-Portal Act, amending the

5

FLSA. <u>Arrington</u>, 531 F. Supp. at 500-502. The amendments included a limitation on retroactive relief and a statute of limitations. As amended, the FLSA places a two-year statute of limitations on wage and hour claims, although the period may be increased to three years where there is a finding of "willful" statutory violations. 29 U.S.C. § 255(a). Moreover, as amended, the FLSA prohibits any employee from pursuing an FLSA claim "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

III. Conflict Preemption

Defendant does not assert that the FLSA expressly preempts State law, that the FLSA preempts the entire field of wage and hour protections, or that a party could not comply with both State and federal requirements. Instead, Defendant relies on the theory of conflict preemption that the UCL, as applied in Plaintiff's claim, stands as an obstacle to the congressional purposes embodied by the FLSA.

A. Identification of a Conflict

Under California law, there is a four-year statute of limitations for UCL claims. <u>Cortez v. Purolator Air Filtration Prods., Co.</u>, 23 Cal. 4th 163, 178-79 (2000). Moreover, California law allows a UCL class to be certified as an "opt-out" class. <u>Sav-On Drug Stores, Inc. v. Super. Ct.</u>, 34 Cal. 4th 319, 340 (2004) (affirming trial court's certification of "opt-out" class for UCL claims predicated upon allegedly improper overtime exemptions).

As noted above, under the FLSA there is a two-year statute of limitations which may be extended to three years only upon a

6

showing of willful statutory violations.  Moreover, in FLSA class actions, all individual plaintiffs must affirmatively "opt-in" by providing their written consent to participating in the class.  29 U.S.C. § 216(b); see also Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 862 (9th Cir. 1977) (parties cannot pursue Rule 23 "opt-out" certification for claims falling under section 216(b)), overruled on other grounds by Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989).  Defendant argues that these procedural differences between the FLSA and the UCL result in conflict preemption.  However, these differences would result in conflict preemption only if the UCL procedures stand as an obstacle to the "accomplishment and execution of the full purposes and objectives of Congress." Williamson v. General Dynamics Corp., 208 F.3d 1144, 1152 (9th Cir. 2000).

     B.   The Purpose of FLSA

     The purpose of the FLSA is to protect employees.  Williamson, at 1154; (citing Barrantine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981)).  Defendant argues that, in light of the Portal-to-Portal Act amendments, the FLSA is meant to protect employers as well as employees.  However, the Ninth Circuit, in Williamson, considered the Portal-to-Portal Act amendments and concluded:  "Despite the [Portal-to-Portal Act] amendments, . . . the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees." Williamson, 208 F.3d at 1052.

     Defendant also contends that Williamson requires preemption of UCL claims predicated upon violations of the FLSA because of the

7

court's statement that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." 208 F.3d at 1154. Defendant's interpretation of <u>Williamson</u>, however, is incorrect.

<u>Barnett v. Washington Mut. Bank, FA</u>, 2004 WL 2011462 (N.D. Cal. 2004) addressed the same issue presented here, and held that the FLSA did not preempt a UCL claim premised upon violations of the FLSA. The court looked at the very statement in <u>Williamson</u> relied upon by Defendant and concluded that this statement was <u>dicta</u> because the Ninth Circuit had stated earlier in the opinion that the lower court's assumption that "the FLSA is the exclusive remedy for claims duplicated by or equivalent of rights covered by the FLSA" was incorrect. <u>Id.</u> at *6 (quoting <u>Williamson</u>, 208 F.3d at 1152).

Another district court in this circuit, also holding that the FLSA did not preempt a UCL claim based on the wrongful refusal to provide overtime pay, looked at the conflicting statements in <u>Williamson</u> and concluded that, in light of the <u>Williamson</u> court's extensive preemption analysis and the general purpose of the FLSA, the second statement "did not relate to any issue actually decided in that case, but was made in passing as an example of what the case <u>was not</u> deciding." <u>Willis v. Cal-Western Transport</u>, CV F 00-5695 AWI LJO at 23 (E.D. Cal. 2000) (emphasis in original).

The Court agrees with the conclusion in <u>Barnett</u> and <u>Willis</u> that the second statement in <u>Williamson</u>, upon which Defendant relies, is <u>dicta</u> and does not relate to any issue decided in the case. Therefore, Defendant's argument that FLSA preempts

8

Plaintiff's UCL claim based on <u>Williamson</u> is unpersuasive.

### C. The UCL Procedures In Question Do Not Conflict With Congressional Purpose

Even if the Portal-to-Portal Act amendments were enacted to balance the interests of employers and employees, the evidence cited by Defendant fails to show that the procedures of the UCL at issue stand as an obstacle to the congressional purpose in enacting the FLSA, as amended by the Portal-to-Portal Act.

#### 1. Opt-out certification

Defendant relies primarily on congressional statements in 29 U.S.C. § 251 to argue that the purpose of the Portal-to-Portal Act amendments, which limit FLSA claims to "opt-in" certifications, would be frustrated by Plaintiff's intention to seek an "opt-out" UCL class. However, because congressional concern in enacting the "opt-in" provision was directed towards "windfall payments, including liquidated damages," absent in a UCL action limited to restitution, there is "no reason to believe that Congress considered whether plaintiffs who are limited to restitution [under the UCL] should have to comply with the opt-in requirement of Section 216(b)." <u>Tomlinson v. Indymac Bank, FSB</u>, 359 F. Supp. 2d 898, 901 (C.D. Cal. 2005) (quoting 29 U.S.C. § 251(a)). More broadly, the Portal-to-Portal Act was "enacted in response to judicial interpretations of the FLSA--not in response to a proliferation of state wage claims." <u>Barnett</u>, 2004 WL 2011462 at *6.

Although not addressing the issue of preemption, in a previous case, this Court held that the same State law claim as that brought

9

by Plaintiff could proceed with an "opt-out" class certification. <u>Kelly v. SBC, Inc.</u>, 1998 U.S. Dist LEXIS 18643, *38 (N.D. Cal. 1998) (FLSA not a bar to a Rule 23 "opt-out" class certification of UCL claims predicated on FLSA violations). The courts in <u>Tomlinson</u> and <u>Barnett</u> arrived at the same conclusion. <u>Tomlinson</u> 359 F. Supp. 2d at 901; <u>Barnett</u>, 2004 WL 2011462 at *6-*7.

The cases cited by Defendant are inapplicable. In <u>Leuthold v. Destination Am., Inc</u>, 224 F.R.D. 462, 469-70 (N.D. Cal. 2004), the court declined to certify an "opt-out" class to pursue claims based on California's fair labor standards and the UCL because it had approved conditional certification of an "opt-in" class under the FLSA and it was concerned that (1) confusion would result in asking potential plaintiffs both to opt in and opt out of the two classes and (2) because the State claims were pendant to the FLSA claim, the court might lack jurisdiction over the State law claims if a large number of plaintiffs in the State law class chose not to prosecute their federal claims. Because there will only be one class in this case, the court's concerns in <u>Leuthold</u> are not present here.

In <u>Rodriguez v. The Texan, Inc.</u> 2001 WL 1829490, *2 (N.D. Ill. 2001), the plaintiff also sought an "opt-in" class under the FLSA and an "opt-out" class for supplemental State labor claims. Although the court was concerned that the policy underlying the Portal-to-Portal Act's "opt-in" requirement would be thwarted if claims for violations of similar State labor laws were allowed to be brought in an "opt-out" class action, the court was also concerned that an "opt-out" class would affect its supplemental

10

jurisdiction over the State claims. Id. As discussed in Leuthold, a request for an "opt-in" and an "opt-out" class presents unique concerns which do not apply here. In La Chappelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975), although the court stated that "opt-out" and "opt-in" classes are mutually exclusive and irreconcilable, it made this statement in determining whether a suit brought under the Age Discrimination in Employment Act (ADEA) may be an "opt-out" class action. Cases in which plaintiffs attempt to circumvent the "opt-in" requirement of 29 U.S.C. § 216(b) for other federal claims, like the ADEA, are inapplicable to State law claims such as the one at issue here. Kelly, 1998 U.S. Dist LEXIS at *37.

Defendant also relies on Lerwill v. Inflight Motion Pictures, Inc. 343 F. Supp. 1027 (N.D. Cal. 1972) and Madrigal v. Green Giant Co., 1981 WL 2331, (E.D. Wash. 1981). However, Lerwill, the sole authority cited by Madrigal, was referred to as "weak precedent" and "dubious authority" by the Ninth Circuit in Williamson. 208 F.3d at 1051. Therefore, the Court does not rely on these courts' analysis.

Plaintiff did not bring an FLSA claim; she brought a State law claim in State court. Therefore, the purpose of the FLSA's "opt-in" requirement, to limit the enormous liability for employers which had been threatened by the thousands of federal wage and hour claims filed in the wake of the Anderson decision, is not directly implicated by Plaintiff's claim. Accordingly, the Court finds that the UCL's opt-out procedure does not stand as an obstacle to the congressional purpose in enacting the FLSA, as amended.

11

### 2. Statute of Limitations

Defendant cites provisions of the FLSA and its legislative history as evidence of congressional intent to limit, through the statute of limitations in the Portal-to-Portal Act, the period of time during which claims can be brought for wage and hour violations under State statutes premised on violations of FLSA. See 29 U.S.C. § 251(a) ("the varying and extended periods of time for which, under the laws of the several States, potential retroactive liability may be imposed upon employers, have given and will give rise to great difficulties in the sound and orderly conduct of business and industry"); see also 93 Cong. Rec. H2183 (1947) (statement of Rep. Donnell) (discussing unfairness to similarly situated workers and employers created by borrowing statutes of limitations from different State laws for FLSA claims). However, these statements of congressional purpose refer only to the problems engendered by the fact that the absence of a statute of limitations in the original FLSA resulted in non-uniform statutes of limitation for a nation-wide federal law. As noted by the sponsor of the bill in the House of Representatives:

> [W]e believe that the reasons for a uniform statute of limitations are clear. In the administration of a Federal law which applies all over the United States, no difference should exist with respect to the time within which a plaintiff may file suit under that law.

Id. The motivation for the two-year statute of limitations was not simply to protect employers, but to ensure uniformity. In fact, in the interest of uniformity, Congress rejected the suggestion that States utilizing a one-year statute of limitations period for FLSA claims be allowed to retain it. Id. at 2184.

12

The UCL is a State law and therefore does not present the problems of uniformity addressed by Congress in administering the FLSA. Moreover, when discussing the federal statute of limitations Congress "expressly state[d] that this limitation does not apply to actions for the recovery of wages brought under state law. . . . [and] envisioned not only that state based claims for wages could be asserted, but that they could be governed by separate procedures." Aragon v. Bravo, 1993 WL 432402, *6 (D. Ariz. 1993) (citing U.S. Code and Cong. Service, 80th Cong., 1st Session, at 1035 (1947)). In sum, a longer statute of limitations for a State law claim does not stand as an obstacle to congressional purpose.

By allowing "opt-out" class actions and longer statute of limitations for UCL claims, California provides increased protections for its workers, furthering the central purpose of the FLSA. The UCL as invoked in Plaintiff's claim does not stand as an obstacle to the purposes of the FLSA.

## CONCLUSION

Based on the foregoing, Defendant's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

Dated:    2/22/06

CLAUDIA WILKEN
United States District Judge