1   JAMES F. CLAPP (145814)
    DOSTART CLAPP GORDON & COVENEY, LLP
2   4370 La Jolla Village Dr. Ste. 970
    San Diego, California 92122
3   Tel.  (858) 623-4200
    Fax. (858) 623-4299
4

5   *Attorneys Continued on Following Page*

6

7

8                  **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10

11  GUITA BAHRAMIPOUR, AUSTIN            Case No. C 04-04440 CW
    HEBERGER, JR., and JANELLA          Case No. C 07-801 CW
12  HAIRSTON, individually, and on behalf of
    all others similarly situated,
13                                      **JOINT MOTION FOR PRELIMINARY**
                Plaintiffs,             **APPROVAL OF CLASS ACTION**
14                                      **SETTLEMENT**
    vs.
15                                      [Briefing Schedule Pursuant to Order
    CITIGROUP GLOBAL MARKETS INC.,      Shortening Time]
16  formerly known as SALOMON SMITH
    BARNEY, INC.,                       Hearing Date: March 2, 2007
17                                      Time: 10:00 a.m.
                Defendant.              Ctrm: 2
18  ─────────────────────────────
    LARRY A. LaVOICE, DONITA A.         Hon. Claudia Wilken
19  WILLIAMS, KENNETH W. GLICK,
    LEWIS SHAPIRO, and FRANCIS P.
20  HEATH, MARK BRAHNEY, TERRY FOX,
    KEITH GILLMAN, STEVEN KOLODNER,
21  ANGELO MASSARO, RONALD
    ROSENZWEIG, ROBERT SCRABIS, and
22  JOSEPH BLOOD, individually, and on
    behalf of all others similarly situated,
23
                Plaintiffs,
24  vs.

25  CITIGROUP GLOBAL MARKETS INC.,
    formerly known as SALOMON SMITH
26  BARNEY, INC.

27              Defendant.

28

─────────────────────────────────────────────────────────────
JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT    C-04-04440 CW

1

*Attorneys Continued from Previous Page*

2

JEFFREY G. SMITH  (*Pro Hac Vice Application Pending*)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

3

270 Madison Avenue
New York, New York 10016

4

Tel.  (212) 545-4600
Fax. (212) 545-4653

5

6

JERRY K. CIMMET (33731)
177 Bovet Rd Ste 600
San Mateo, CA 94402-3122

7

Tel.  (650) 866-4700
Fax. (650) 866-4770

8

9

EDWARD P. D'ALESSIO
WINNE, BANTA, HETHERINGTON, BARALIAN & KAHN, P.C.
21 Main Street, P.O. Box 647

10

Hackensack, New Jersey 07602-0647

11

Tel. (201) 487-3800
Fax.(201) 487-8529

12

13

MAX FOLKENFLIK
FOLKENFLIK & McGERITY
1500 Broadway, 21st Floor

14

New York, New York 10036
Tel.  (212) 757-0400

15

16

SHANNON LISS-RIORDAN
PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.
18 Tremont Street, Ste. 500

17

Boston, Massachusetts 02108
Tel.  (617) 367-7200

18

Fax. (617)367-4820

19

BRUCE M. NAGEL
NAGEL RICE, LLP

20

103 Eisenhower Parkway
Roseland, New Jersey 07068

21

Tel.  (973) 618-0400
Fax. (973) 618-9194

22

**Attorneys for Plaintiffs**

23

24

25

26

27

28

1   CHRIS A. HOLLINGER  (147637)
    CHRISTOPHER T. SCANLAN  (211724)
2   O'MELVENY & MYERS LLP
    Embarcadero Center West
3   275 Battery Street
    San Francisco, CA  94111-3305
4   Tel. (415) 984-8700
    Fax.(415) 984-8701
5
    FRAMROZE M. VIRJEE  (120401)
6   ADAM P. KOHSWEENEY  (229983)
    O'MELVENY & MYERS LLP
7   400 South Hope Street
    Los Angeles, California 90071-2899
8   Tel.  (213) 430-6000
    Fax. (213) 430-6407
9
    **Attorneys for Defendant**
10  **Citigroup Global Markets Inc**.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................................i

TABLE OF AUTHORITIES .....................................................................................................ii

NOTICE OF MOTION.............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................2

I.   INTRODUCTION............................................................................................................2

II. SUMMARY OF CLAIMS AT ISSUE ...........................................................................4

   A. Factual Background .................................................................................................4

   B. Plaintiffs' FLSA Overtime Claims..........................................................................6

   C. Plaintiffs' State Law Overtime Claims ...................................................................8

      1.  California Overtime Claims...............................................................................8

      2.  Remaining State Law Overtime Claims ...........................................................9

   D. Claims for Reimbursement of Wage Deductions ...................................................9

      1.  California Wage Deduction Claims.................................................................10

      2.  Wage Deduction Claims in Other States .......................................................11

III. THE TERMS OF THE PROPOSED SETTLEMENT ..................................................13

IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.................17

V.  THE COURT SHOULD APPROVE THE SETTLEMENT ALTHOUGH ONE
    NAMED PLAINTIFF DOES NOT FULLY SUPPORT IT...................................................18

VI. CONCLUSION ..............................................................................................................20

1

## TABLE OF AUTHORITIES

2

**CALIFORNIA CASES**

3
4

Hudgins v. Nieman Marcus Group, Inc.
34 Cal.App.4th 1109 (1995) ...........................................................................................10

5

Kerr's Catering v. Department of Industrial Relations
57 Cal.2d 319 (1962) ................................................................................................ 10, 11

6

7

Koehl v. Verio
142 Cal.App.4th 1313 (2006) .........................................................................................10

8

Quillian v. Lion Oil Co.
9

96 Cal.App.3d 156 (1979) ..............................................................................................10

10

Ramirez v. Yosemite Water Co., Inc.
20 Cal.4th 785 (1999) .......................................................................................................8

11

Steinhebel v. Los Angeles Times Communications
12

26 Cal.App.4th 696 (2005) .............................................................................................10

13

**SUPREME COURT OF CALIFORNIA**

14

Prachasaisoradej v. Ralphs Grocery,
102 P.3d 903 ...................................................................................................................11

15

16

**NEW JERSEY CASES**

Eule v. Eule Motor Sales,
17

34 N.J. 537, 540-41 (1961) .............................................................................................11

18

Male v. Acme Markets, Inc.
110 N.J. Super. 9, 13 (1970) ...........................................................................................11

19

**SUPREME COURT OF MICHIGAN**

20

Sands Appliance Services v. Wilson
21

463 Mich. 231 (2000) ......................................................................................................12

22

**SUPREME COURT OF WEST VIRGINIA**

23

Robertson v. Opequon Motors, Inc.
205 W.Va. 560, 567 (1999) ....................................................................................... 12, 13

24

**FEDERAL CASES**

25

Dean Witter Reynolds, Inc. v. Ross
26

75 A.D.2d 373, 381 (1980) ..............................................................................................13

27

Franklin v. Kaypro Corp.
884 F.2d 1222, 1225 (9th Cir. 1989) ...............................................................................17
28

Gautreaux v. Pierce,
690 F.2d 616 (7th Cir. 1982) .................................................................. 3, 17

Gottlieb v. Kenneth D. Laub & Co.
82 N.Y.2d 457, 461 (1993) ......................................................................... 13

Hudgins v. Frito-Lay, Inc.
90 N.Y. 2d 342, 349 (1997) ....................................................................... 13

Martin v. Refrigeration School, Inc.
968 F.2d 3, 7 n.2 (9th Cir. 1992) ................................................................. 7

Pachter v. Bernard Hodes Group, Inc.
2005 U.S. Dist. LEXIS 18005 (S.D.N.Y. Aug. 25, 2005) ........................... 13

Parker v. Anderson
667 F.2d 1204 (5th Cir. 1982) .................................................................... 19

Six (6) Mexican Workers v. Arizona Citrus Growers
904 F.2d 1301, 1311 (9th Cir. 1990) .......................................................... 16

Staton v. Boeing Co.
327 F.3d 938, 960 (9th Cir. 2003) .............................................................. 19

Takacs v. A.G. Edwards & Sons, Inc.
444 F.Supp.2d 1100 (S.D. Cal. 2006)........................................................... 6

In re Traffic Executive Association-Eastern Railroads
627 F.2d 631, 634 (2nd Cir. 1980)............................................................. 17

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.
396 F.3d 96, 116 (2nd Cir. 2005) ............................................................ 3, 17

Walsh v. Great Atlantic & Pacific Tea Co.
726 F.2d 956 (3rd Cir. 1983) .................................................................... 19

**SUPREME COURT OF THE UNITED STATES**

Arnold v. Ben Kanowsky, Inc.
361 U.S. 388, 392 (1960).............................................................................. 6

Auer v. Robbins
519 U.S. 452, 461 (1997)............................................................................... 7

**REGULATIONS AND STATUTES**

8 Alaska Admin. Code § 15.160(a) .............................................................. 11

Cal. Lab. Code § 510(a)................................................................................. 8

Cal. Lab. Code § 515(a)................................................................................. 8

Fed. R. Civ. P. 23(e) .............................................................................. 3, 17

iii

Fed. R. Civ. P. 53(a)(1)(A) ............................................................... 4, 20

29 C.F.R. § 541.200(a)(1) ..................................................................... 6

29 C.F.R. § 541.200(a)(2) ..................................................................... 7

29 C.F.R. § 541.203(a) ......................................................................... 7

29 C.F.R. § 541.203(b) ......................................................................... 8

29 C.F.R. § 541.600 ............................................................................. 8

29 C.F.R. § 779.317 ............................................................................. 7

29 C.F.R. § 779.318 ............................................................................. 7

Haw. Rev. Stat. § 388-6 ...................................................................... 11

Kan. Admin. Reg. § 44-319(a)(3) ....................................................... 12

Ky. Rev. Stat. § 337.060 ..................................................................... 11

26 Me. Rev. Stat. § 629 ...................................................................... 11

Mich. Comp. Laws § 408.477(1) ......................................................... 12

Mich. Comp. Laws § 408.478 .............................................................. 12

N.H. Rev. Stat. § 275:48 ..................................................................... 12

N.Y. Lab. Law § 193 ........................................................................... 13

Or. Rev. Stat. § 652.610(3) ................................................................. 12

Rev. Code Wash. § 49.52.060 ............................................................. 12

R.I Gen. Laws § 28-14-24(a)(1) .......................................................... 11

29 U.S.C. § 201 ..................................................................................... 2

29 U.S.C. § 207(a)(1) ............................................................................ 6

29 U.S.C. § 207(i) .................................................................................. 7

29 U.S.C. § 216(b) ............................................................................... 16

Weil's Code Wy. Rules, 025-0140-001, § 6(b)(vi) .............................. 11

W. Va. Code § 21-5-3 .......................................................................... 13


**SECONDARY AUTHORITIES**

Conte & Newberg, Newberg on Class Actions (4th Ed. 2002), § 11.25 at pp. 38-39 ................. 17

Manual for Complex Litigation, Third, §§ 30.41, 30.42, pp. 237, 240 .................................. 3, 17

November 27, 2006, DOL Opinion Letter, pp. 7-8 ................................................................. 6, 7

1    **NOTICE OF MOTION**

2    TO THE ABOVE-CAPTIONED COURT AND TO ALL PARTIES:

3    PLEASE TAKE NOTICE that on March 2, 2007 at 10:00 a.m. in Courtroom 2 of the

4    above-captioned Court, the Hon. Claudia Wilken presiding, plaintiffs Austin Heberger, Jr.,

5    Janella Hairston, Larry A. LaVoice, Donita A. Williams, Kenneth W. Glick, Lewis Shapiro,

6    Francis P. Heath, Mark Brahney, Terry Fox, Keith Gillman, Steven Kolodner, Angelo Massaro,

7    Ronald Rosenzweig, Robert Scrabis, and Joseph Blood (collectively "Plaintiffs") and defendant

8    Smith Barney, a Division of Citigroup Global Markets Inc. ("CGMI") will jointly move the Court

9    for preliminary approval of a proposed class action settlement of the above-captioned actions,

10   Bahramipour et al. v. Citigroup Global Markets, Inc., N.D. Cal. Case No. 04-04440 CW and

11   LaVoice et al. v. Smith Barney, A Division Of Citigroup Global Markets, Inc., N.D. Cal. Case

12   No. 07-801 CW, pursuant to Fed. R. Civ. P. 23(e).  The terms of the settlement are contained

13   within the "Joint Stipulation of Class Action Settlement and Release," filed herewith.

14   In addition, to assist the parties and the Court with the proper allocation of settlement

15   proceeds among the 50+ states and territories covered by the settlement, the parties will jointly

16   move for the appointment of the Hon. Charles A. Legge as special master pursuant to Fed. R. Civ.

17   P. 53(a)(1)(A).  The parties will ask the Court to permit Judge Legge to review the parties'

18   proposed allocation of settlement proceeds between California on the one hand and the other 49+

19   states and territories on the other hand, and also to determine a formula for the allocation of

20   settlement proceeds among the non-California states and territories, in light of any non-binding

21   recommendations of Co-Lead Class Counsel, the applicable laws of each jurisdiction, and any

22   other factors deemed appropriate by Judge Legge.  If approved by the Court, the parties will ask

23   Judge Legge to make an independent written recommendation to the Court as to a settlement

24   allocation that is fair, reasonable, and in the best interests of the class.

25   This motion will be based on this Notice, the attached Memorandum of Points and

26   Authorities, the Joint Stipulation of Class Action Settlement and Release, the Declarations of

27   James F. Clapp, Jeffrey G. Smith, and W. William Brab, filed herewith, and on such further

28   evidence and argument as may be presented at the hearing.

1

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION.**

3        This is a joint motion for preliminary approval of a proposed $98 million class and

4    collective action settlement of wage and hour claims against defendant Smith Barney, a Division

5    of Citigroup Global Markets Inc. ("CGMI"). This settlement exceeds the amount that CGMI's

6    competitor, UBS Financial Services, agreed to pay to settle similar wage and hour claims, which

7    settlements were recently approved by the Hon. Maxine M. Chesney.

8        CGMI is a securities broker-dealer that employs approximately 12,000 stockbrokers and

9    related employees (known as "Financial Advisors," "Financial Advisor Associates," "Financial

10   Consultants," and "Financial Consultant Associates") throughout the United States and its

11   territories. Plaintiffs allege that CGMI misclassified these employees as "exempt" employees,

12   thereby denying them overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201

13   et seq. ("FLSA"), as well as state law. Plaintiffs also allege that CGMI took illegal deductions

14   from the wages of these employees to pay for such business-related expenses as administrative

15   support and losses due to trading errors. CGMI denies plaintiffs' allegations and maintains that,

16   at all times, it paid these employees in accordance with applicable law.

17       This settlement is the product of three all-day mediation sessions before two different

18   mediators. On October 7, 2005, the parties attended a mediation before Susan W. Haldeman,

19   Esq., a well-respected mediator. That mediation was unsuccessful. The second and third

20   mediations occurred on May 8, 2006 and September 8, 2006 before David A. Rotman, Esq., who

21   is widely regarded as the leading mediator in the United States in the field of wage and hour class

22   actions. With Mr. Rotman's assistance in these two all-day mediation sessions, and through

23   extensive and continuous arm's-length negotiations since their last mediation session, the parties

24   reached the settlement memorialized in the "Joint Stipulation of Class Action Settlement and

25   Release" (referred to herein as the "Stipulation" or "Settlement"), filed herewith.

26       Under Fed. R. Civ. P. 23(e), the claims of putative class members may be settled only

27   with court approval. During the preliminary approval stage, the Court decides whether the

28   proposed settlement falls "within the range of possible approval." Manual for Complex

2

Litigation, Third, § 30.41, p. 237 (1995). If so, the Court should grant preliminary approval of the settlement and schedule a formal fairness hearing. Id.; Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Settlements that are reached as a result of arm's-length bargaining between experienced and well-informed counsel are entitled to a presumption of fairness. Manual for Complex Litigation, Third, § 30.42, p. 240; Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2nd Cir. 2005).

As discussed below, the proposed Settlement falls well within the "range of possible approval" – particularly in light of the novelty of plaintiffs' claims, the uncertainties regarding the applicability and interpretation of relevant laws, and the risks and costs associated with further litigation. Furthermore, the Settlement is entitled to a presumption of fairness, since it was reached through arm's-length bargaining between experienced counsel over an extended period of time, after a thorough exchange of formal and informal discovery, and with the assistance of two highly qualified mediators.[1]

Because the Settlement involves the laws of more than 50 states and territories – some of which are more favorable to employees than others – one important question is how to allocate the proceeds among the various jurisdictions covered by the Settlement. To assist the parties and the Court with this allocation, the parties respectfully request that the Court appoint the Hon. Charles A. Legge as special master to review the parties' proposed allocation of settlement proceeds between California on the one hand and the other 49+ states and territories on the other hand, and also to determine a formula for the allocation of settlement proceeds among the non-California states and territories, and ultimately to make an independent written recommendation to the Court as to a settlement allocation that is fair and reasonable. Recently, Judge Legge served in a similar capacity in connection with a nationwide settlement of wage and hour claims

---

[1] As of this writing, one of the sixteen named plaintiffs, Guita Bahramipour, does not fully support the Settlement. Although Ms. Bahramipour believes that the amount of the Settlement is reasonable, she is concerned that CGMI will try to make up the cost of the Settlement by cutting the commission payout to CGMI's current Financial Advisors. CGMI unequivocally denies Ms. Bahramipour's allegation, and plaintiffs' counsel have seen no evidence that CGMI has reduced its commission payout in order to pay for the cost of the Settlement. For the reasons discussed in Section V below, the Court should preliminarily approve the Settlement even though Ms. Bahramipour does not fully support it.

3

1    brought on behalf of Financial Advisors of UBS Financial Services, Inc.  See "Order Appointing

2    the Honorable Charles Legge as Master Pursuant to the Stipulation of Parties," Docket No. 116 in

3    Glass v. UBS Financial Services, Inc., N.D. Cal. Case No. 06-4068 MMC (attached as Exhibit 1

4    to the Declaration of James F. Clapp, filed herewith).  On January 26, 2007, the Hon. Maxine M.

5    Chesney granted final approval of that settlement, relying in part on Judge Legge's findings

6    regarding the allocation of settlement proceeds.  See "Order Granting Motion for Final Approval

7    of Settlement, et al.," Docket No. 230 (Exhibit 2 to the Clapp declaration).  Given Judge Legge's

8    familiarity with the laws of the states and territories covered by the Settlement, allowing Judge

9    Legge to make a recommendation regarding the settlement allocation before the class notice is

10   mailed would ease the burden on the Court and may head-off potential objections.

11        Accordingly, the parties respectfully request that the Court: (1) preliminarily approve the

12   proposed $98 million settlement; (2) conditionally certify the class described herein for settlement

13   purposes only; and (3) appoint Judge Legge as special master pursuant to Fed. R. Civ. P.

14   53(a)(1)(A) to make a recommendation regarding the allocation of settlement proceeds.  Upon

15   receipt of Judge Legge's written recommendation, the parties will return to this Court and ask the

16   Court to: (4) incorporate the proposed allocation into the class notice; (5) authorize the mailing of

17   the notice; and (6) set a final approval hearing.

18   **II.    SUMMARY OF CLAIMS AT ISSUE.**

19        A.    Factual Background.

20        CGMI is a full-service financial services firm headquartered in New York.  CGMI

21   currently employs approximately 12,000 licensed stockbrokers throughout the United States and

22   its territories.  The four stockbroker positions that are covered by this Settlement are "Financial

23   Advisor," "Financial Advisor Associate," "Financial Consultant," and "Financial Consultant

24   Associate."  For the sake of simplicity, the parties will refer to the four positions collectively as

25   "Financial Advisors."

26        The job of a Financial Advisor is to develop client relationships, gather financial

27   information, make investment recommendations, and provide access to financial products and

28   services.  Financial Advisors are compensated based on commissions and fees they generate for

4

the firm, using a complex formula that takes into account such factors as the type of financial product sold and the Financial Advisor's overall commission production and industry experience. Financial Advisors receive a guaranteed monthly payment against their commissions, usually in the range of $2,000 to $3,000 per month. To the extent a Financial Advisor failed to generate enough commissions to cover his or her guaranteed monthly payment, the deficit was carried forward and recovered from commissions in succeeding months. In calculating a Financial Advisor's commissions, CGMI may also factor in such expenses as wages of the support staff, losses due to trading errors, marketing expenses, registration fees, and similar charges. These adjustments are authorized by the Financial Advisors in writing. CGMI classifies Financial Advisors as "exempt" from overtime under the FLSA and under applicable state law.

On September 16, 2004, plaintiff Guita Bahramipour filed a lawsuit in the Alameda County Superior Court entitled <u>Bahramipour v. Citigroup Global Markets, Inc.</u>, which was subsequently removed to this Court and assigned Case No. 04-04440. <u>Bahramipour</u> is a putative class action brought on behalf of CGMI's Financial Advisors in the State of California. The lawsuit alleges that CGMI's Financial Advisors in California are entitled to overtime pay under the FLSA and under California law because they are improperly classified as "exempt" employees. The lawsuit also alleges that CGMI has wrongfully deducted certain business-related expenses from the wages of its Financial Advisors, such as the cost of administrative support and losses due to trading errors. Plaintiffs allege that these deductions violate California Labor Code sections 221, 400-410, and 2802.

After <u>Bahramipour</u>, other class action lawsuits were filed against CGMI in various courts throughout the United States, including: (1) <u>Brahney et al. v. Smith Barney, Inc. et al.</u>, U.S. District Court, District of New Jersey, Case No. 05-CV-5545; (2) <u>LaVoice v. Citigroup Global Markets Inc.</u>, U.S. District Court, Southern District of New York, Case No. 06-CV-0756; (3) <u>Williams v. Citigroup Global Markets Inc.</u>, U.S. District Court, Eastern District of New York, Case No. CV-06-1937; (4) <u>Heath v. Citigroup Global Markets Inc.</u>, U.S. District Court, Southern District of New York, Case No. 06-CV-3458; (5) <u>Blood v. Citigroup Global Markets Inc.</u>, U.S. District Court, District of Massachusetts, Case No. 06-CA-10848; and (6) <u>Glick et al. v. Citigroup</u>

5

1   Global Markets Inc., New Jersey Superior Court Law Division, Bergen County, Docket No.

2   BER-L-3369-06.  Like Bahramipour, these lawsuits allege that CGMI's Financial Advisors in the

3   relevant state (and, in some cases, throughout the United States) are entitled to overtime pay and

4   reimbursement of business expenses under applicable federal and state law.   As part of the

5   Settlement, these six actions have been stayed and a consolidated action, entitled LaVoice et al. v.

6   Smith Barney, A Division Of Citigroup Global Markets, Inc., Case No. C 07-801 CW, has been

7   filed in this Court and related to Bahramipour.   The Bahramipour action, the six out-of-state

8   lawsuits, and the consolidated action are collectively referred to as the "Actions."

9         B.    Plaintiffs' FLSA Overtime Claims.

10         Under the FLSA, all employees, regardless of their title, must be paid overtime for any

11   hours they work in excess of 40 per week, unless the employee is "exempt."  29 U.S.C. §

12   207(a)(1).  The employer bears the burden of proving that the employee is exempt from overtime.

13   Arnold v. Ben Kanowsky, Inc. 361 U.S. 388, 392 (1960).   Plaintiffs contend that Financial

14   Advisors do not meet the test for exempt status under the FLSA.   Conversely, CGMI contends

15   that Financial Advisors are exempt from overtime under several exemptions, including but not

16   limited to the "administrative" and "commissioned sales" exemptions.

17         In order to qualify for the administrative exemption, the employee must be paid on a

18   salary or fee basis.  29 C.F.R. § 541.200(a)(1). One of the key disputes in this case is whether the

19   guaranteed monthly payment that CGMI makes to its Financial Advisors qualifies as a "salary"

20   for the purpose of the salary basis test.  Plaintiffs cite to the recent district court opinion in Takacs

21   v. A.G. Edwards & Sons, Inc., 444 F.Supp.2d 1100 (S.D. Cal. 2006), in which the court

22   suggested that a draw might not qualify as a salary under the salary basis test.  Id. at 1110.  On the

23   other hand, CGMI relies on a November 27, 2006 opinion letter from the U.S. Department of

24   Labor, which holds that a guaranteed payment meets the salary basis test provided that the

25   amount of the payment does not fall below the FLSA's minimum salary threshold (currently $455

26   per week, or $1,971.67 per month).  See November 27, 2006 opinion letter, pp. 7-8, attached as

27   Exhibit 3 to the Clapp declaration.  The DOL letter is significant because the salary basis test "is a

28   creature of the Secretary [of Labor]'s own regulations," and the DOL's interpretation is

6

1    controlling "unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519

2    U.S. 452, 461 (1997). In this case, CGMI has consistently taken the position that it provides its

3    Financial Advisors with a guaranteed monthly payment that satisfies the FLSA's minimum salary

4    requirement. In light of the opinion letter, plaintiffs face a substantial risk that a court might rule

5    that CGMI meets the salary basis test.

6         Another element of the administrative exemption is the "duties" test.   29 C.F.R. §

7    541.200(a)(2). Plaintiffs claim that Financial Advisors are not administratively exempt because

8    their primary duty is selling financial products. See 29 C.F.R. § 541.203(a). Conversely, CGMI

9    contends that a Financial Advisor's primary duty is to analyze the customer's financial

10   information and advise the customer about which financial product best meets the customer's

11   needs, which is exempt work. Id. In its November 27, 2006 opinion letter, the DOL held that

12   stockbrokers are exempt even though they spend some of their time selling financial products.

13   See November 27, 2006 opinion letter, pp. 5-6, Exhibit 3 to the Clapp declaration. The opinion

14   letter increases the likelihood that a court might rule against plaintiffs on the duties test.

15        As a separate defense to plaintiffs' FLSA claims, CGMI has asserted the commissioned

16   sales exemption. An employee is exempt under the commissioned sales exemption if he or she

17   (1) earns at least 1.5 times the federal minimum wage, (2) more than half of the employee's

18   compensation represents commissions, and (3) he or she is employed by a "retail or service

19   establishment." 29 U.S.C. § 207(i). Financial Advisors meet the first two criteria, but the parties

20   dispute whether CGMI qualifies as a retail or service establishment. Plaintiffs argue that, under

21   the Department of Labor's regulations, "stock or commodity brokers" do not qualify as retail or

22   service establishments. 29 C.F.R. § 779.317. On the other hand, CGMI points out that Section

23   779.317 has been criticized by the Ninth Circuit as arbitrary and "not flow[ing] from any

24   cohesive criteria." Martin v. Refrigeration School, Inc., 968 F.2d 3, 7 n.2 (9th Cir. 1992).

25   Instead, CGMI argues that it meets the definition of a retail or service establishment because it

26   "sells goods and services to the general public" and generally functions at the "very end of the

27   stream of distribution." See 29 C.F.R. § 779.318.

28

7

1      Thus, with regard to the FLSA overtime claims, CGMI potentially has at least two

2  complete defenses to liability.

3      C.      Plaintiffs' State Law Overtime Claims.

4      The Settlement, if approved, would also resolve any overtime claims that might exist

5  under state law.  Sixteen states do not have overtime requirements that are independent of the

6  FLSA.  Of the remaining states, all but seven have adopted exemptions that are identical to the

7  FLSA's.  Thus, with the exception of these seven states, the analysis of the strengths and

8  weaknesses of the state law overtime claims is identical to the analysis under the FLSA.  The

9  seven states that require additional discussion are California, New York, New Jersey, Wisconsin,

10  Maine, Connecticut, and Rhode Island.

11      1.      California Overtime Claims.

12      California law requires that an employer pay an employee overtime for any hours

13  worked in excess of 40 per week or 8 per day.  Cal. Lab. Code § 510(a).  California's

14  administrative exemption is narrower and more favorable to employees than the FLSA's

15  administrative exemption, in that: (1) California has adopted a purely quantitative test for

16  measuring exempt status (i.e. an exempt employee must spend 50% or more of his or her time on

17  exempt administrative tasks) as opposed to the qualitative "primary duty" test under the FLSA

18  (see Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 797-98 (1999)); and (2) California's

19  administrative exemption requires that the employee be paid a guaranteed amount of not less than

20  twice the California minimum wage (prior to January 1, 2007, equivalent to $2,340 per month),

21  whereas the FLSA's salary requirement was only $671.67 per month until August 23, 2004 and

22  $1,971.67 thereafter (compare Cal. Lab. Code § 515(a) to 29 C.F.R. § 541.600).  Furthermore,

23  California's commissioned sales exemption differs from the FLSA's in that California's

24  exemption requires that the employee be "involved principally in selling a product or service."

25  Ramirez, 20 Cal.4th at 804.  Plaintiffs argue that California's commissioned sales exemption is

26  fundamentally inconsistent with the FLSA's administrative exemption, since an employee who is

27  involved principally in sales cannot be administratively exempt.  See 29 C.F.R. § 541.203(b)

28  ("[A]n an employee whose primary duty is selling financial products does not qualify for the

8

1   administrative exemption.")  In other words, under plaintiffs' theory, if CGMI attempted to

2   invoke the California commissioned sales exemption, this would prevent CGMI from relying on

3   the FLSA's administrative exemption, and vice versa.   CGMI's position is that the two

4   exemptions are not incompatible, and that an employee can qualify for both the FLSA's

5   administrative exemption and California's commissioned sales exemption.   Nevertheless, both

6   sides agree that CGMI's risk of liability under California overtime law is greater than under the

7   laws of the other states.

8               2.      Remaining State Law Overtime Claims.

9               As referenced above, all states (other than California) either have overtime

10  requirements that are not independent of the FLSA or have adopted overtime exemptions that are

11  substantially the same as the FLSA's exemptions.   All these states require the payment of

12  overtime for any hours worked over 40 per week.   In particular, these states define the

13  administrative exemption in a manner that is virtually identical to the FLSA (except that in New

14  York, New Jersey, Wisconsin, Maine, Connecticut, and Rhode Island, the salary requirements

15  have at times been higher).  Because these states' laws are modeled after the FLSA, the potential

16  defenses CGMI has to the FLSA claims apply equally to the claims under state law (with the

17  exception of California).

18          D.      Claims for Reimbursement of Wage Deductions.

19              Plaintiffs also seek recovery of certain expenses that, in their view, were improperly

20  deducted from the wages of Financial Advisors, including payments to the support staff, losses

21  due to trading errors, marketing expenses, registration fees, and similar charges.  CGMI believes

22  that the challenged practices are part of a lawful commission calculation.  In all cases, these

23  deductions/adjustments were made with the written consent of the Financial Advisor.  Because

24  the FLSA does not prohibit wage deductions so long as the employee earns at least the federal

25  minimum wage (currently $5.15 per hour), plaintiffs bring these claims under state law.

26              In the majority of states and territories, these types of adjustments are legal even if

27  characterized as a deduction from wages – either there is no law on the subject, or state law

28  expressly permits the deductions so long as they are authorized by the employee in writing.

9

1    However, plaintiffs' counsel's analysis indicates that approximately 15 states have laws that

2    arguably restrict an employer's right to deduct business-related expenses from an employee's

3    wages, even if the employee authorizes the deduction in writing.   These states are: Alaska,

4    California, Hawaii, Kansas, Kentucky, Michigan, New Hampshire, New Jersey, New York,

5    Oregon, Pennsylvania, Rhode Island, Washington, West Virginia, and Wyoming.  Of these states,

6    California's laws are most favorable to employees.

7              1.    <u>California Wage Deduction Claims.</u>

8          Plaintiffs' California wage deduction claims are based on both statutory authority

9    as well as a long line of cases beginning with the California Supreme Court's decision in <u>Kerr's</u>

10    <u>Catering v. Department of Industrial Relations</u>, 57 Cal.2d 319 (1962).  In <u>Kerr's</u>, the court upheld

11    an administrative regulation that prevented an employer from deducting losses due to cash

12    shortages from an employee's commissions.   The court observed that "some cash shortages,

13    breakage and loss of equipment are inevitable in almost any business operation.  It does not seem

14    unjust to require the employer to bear such losses as expenses of management . . . ." <u>Id.</u> at 329.

15    Later, in <u>Quillian v. Lion Oil Co.</u>, 96 Cal.App.3d 156 (1979) and <u>Hudgins v. Nieman Marcus</u>

16    <u>Group, Inc.</u>, 34 Cal.App.4th 1109 (1995), the California appellate court relied on <u>Kerr's</u> to

17    invalidate compensation plans in which business-related expenses were subtracted from the

18    calculation of an employee's incentive pay.  Plaintiffs argue that <u>Kerr's</u>, <u>Quillian</u>, and <u>Hudgins</u>

19    prevent CGMI from deducting business costs from the Financial Advisors' commissions, since

20    these costs are "expenses of management." <u>Kerr's</u> at 329.

21          The statutory authority for plaintiffs' wage deduction claims is California Labor

22    Code § 2802.   Section 2802 requires an employer to indemnify an employee against all

23    "necessary" expenses the employee incurs in the course of his or her job. <u>Id.</u> Plaintiffs argue that

24    the payments to the support staff and the other business-related expenses are "necessary" because,

25    without these payments, a Financial Advisor would not be able to succeed in the job.

26          CGMI contests the validity of plaintiffs' wage deduction claims.  CGMI points out

27    that recent decisions in <u>Steinhebel v. Los Angeles Times Communications</u>, 26 Cal.App.4th 696

28    (2005) and <u>Koehl v. Verio</u>, 142 Cal.App.4th 1313 (2006), suggest that it is lawful to make

10

1   adjustments in the compensation of employees for certain business-related expenses.  CGMI also

2   argues that the validity of the <u>Kerr's</u> line of cases is questionable, given that the California

3   Supreme Court has granted review in <u>Prachasaisoradej v. Ralphs Grocery</u>, 102 P.3d 903 (review

4   granted December 14, 2004).  In that case, the court will decide whether a compensation plan that

5   includes business expenses in its compensation formula is legal under Section 2802, among other

6   statutes.  Finally, CGMI contends that it pays all expenses that are "necessary" to the Financial

7   Advisor's job, and that any expenses a Financial Advisor personally incurs are voluntary and not

8   necessary.

9         Notwithstanding these arguments, both sides agree that CGMI's risk of liability

10  under California's wage deduction laws is greater than under the laws of other states.

11         2.   <u>Wage Deduction Claims in Other States.</u>

12         As set forth more fully below, Plaintiffs' counsel's analysis indicates that Alaska,

13  Hawaii, Kansas, Kentucky, Maine, Michigan, New Hampshire, New Jersey, New York, Oregon,

14  Pennsylvania, Rhode Island, Washington, West Virginia, and Wyoming have statutes and/or

15  reported cases that arguably limit an employer's right to deduct certain types of business expenses

16  from an employee's wages.

17         For example, Alaska, Hawaii, Kentucky, Maine, Rhode Island, and Wyoming have

18  statutes that prevent an employer from deducting losses due to employee negligence.  <u>See</u> 8

19  Alaska Admin. Code § 15.160(a) (employer cannot deduct for "damage or breakage costs" unless

20  due to willful misconduct); Haw. Rev. Stat. § 388-6 (no deductions for "defective or faulty

21  workmanship" unless employee's misconduct was willful); Ky. Rev. Stat. § 337.060 (same as

22  Hawaii); 26 Me. Rev. Stat. § 629 (employer cannot require employee to bear losses as condition

23  of employment); R.I Gen. Laws § 28-14-24(a)(1) (employer cannot set-off losses against

24  employee's wages); Weil's Code Wy. Rules, 025-0140-001, § 6(b)(vi) (employer cannot deduct

25  losses unless employee's negligence has been determined in a judicial proceeding).  At least one

26  New Jersey court has read a similar limitation into New Jersey law.  <u>Eule v. Eule Motor Sales</u>, 34

27  N.J. 537, 540-41 (1961); <u>but see</u> <u>Male v. Acme Markets, Inc.</u>, 110 N.J. Super. 9, 13 (1970)

28  (suggesting that wage deduction is permitted if employee admits fault).  Plaintiffs contend that

11

these statutes and judicial decisions prevent CGMI from deducting losses due to trading errors from a Financial Advisor's commissions.  CGMI's response is twofold:  first, that the adjustments at issue are part of a lawful commission calculation that do not qualify as a deduction from wages in the first instance; and second, that even if the adjustments were deemed deductions from wages, the relevant statutes permit CGMI to deduct losses resulting from willful or grossly negligent conduct on the part of the Financial Advisor, and determining whether a Financial Advisor's conduct was sufficiently culpable to warrant a deduction must be done on a case-by-case (as opposed to a class) basis.

Kansas, New Hampshire, Oregon, and Washington have statutes that appear to prohibit any type of wage deduction unless the deduction benefits the employee.  See Kan. Admin. Reg. § 44-319(a)(3); N.H. Rev. Stat. § 275:48; Or. Rev. Stat. § 652.610(3); Rev. Code Wash. § 49.52.060 (deduction must be authorized in writing by employee and accrue to employee's benefit).  However, CGMI responds that allowing Financial Advisors to divert part of their commissions on a pre-tax basis to pay their business expenses actually benefits the Financial Advisors, since these expenses are not fully deductible on an individual tax return (i.e., they are subject to the 2% limitation for "Miscellaneous" deductions).

Michigan has a statute that prevents an employer from requiring an employee to pay any form of remuneration or consideration as a condition of employment.  Mich. Comp. Laws § 408.478.  The Michigan Supreme Court has interpreted Section 408.478 to prohibit an employer from forcing an employee to sign an agreement to repay training expenses.  Sands Appliance Services v. Wilson, 463 Mich. 231 (2000).  On the other hand, Michigan law appears to permit wage deductions so long as the employer obtains "the full, free, and written consent of the employee." Mich. Comp. Laws § 408.477(1).  CGMI's position is that the authorities cited by plaintiffs are not applicable to commission calculations, and that even if they are, the deductions are authorized in writing by the Financial Advisors and are completely voluntary.

In West Virginia, a decision from the state Supreme Court entitled Robertson v. Opequon Motors, Inc., 205 W.Va. 560, 567 (1999), holds that an employer cannot deduct certain business expenses, such as credit card charges and repair costs, from an employee's commissions

12

without first obtaining a notarized wage assignment from the employee. Id. citing W. Va. Code § 21-5-3. However, in that case, the court emphasized that the deductions were arbitrary and not fully disclosed to the employees. Id. at 565-66. Here, CGMI argues, the Financial Advisors are aware of the deductions from their commissions before they are taken, and, in many cases, specifically request the adjustments.

Finally, New York has a statute that prohibits any type of deduction from wages unless the deduction is authorized in writing and benefits the employee. N.Y. Lab. Law § 193. New York's highest court, the Court of Appeals, has stated that Section 193 "was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." Hudgins v. Frito-Lay, Inc., 90 N.Y. 2d 342, 349 (1997). Relying on Hudgins, a federal district court in New York recently held that an employer violated Section 193 when it deducted certain business expenses from an employee's commissions. Pachter v. Bernard Hodes Group, Inc., 2005 U.S. Dist. LEXIS 18005 (S.D.N.Y. Aug. 25, 2005). However, other courts have held that Article 6 of the New York Labor Law (which includes Section 193) does not apply to exempt employees. See Gottlieb v. Kenneth D. Laub & Co., 82 N.Y. 2d 457, 461 (1993) (suggesting that Article 6 does not protect employees serving in an executive, managerial, or administrative capacity). Furthermore, even if Section 193 does protect Financial Advisors, a New York appellate court has held that a brokerage house may deduct business expenses from a stockbroker's incentive pay because incentive pay is not a "wage" for purposes of Section 193. Dean Witter Reynolds, Inc. v. Ross, 75 A.D.2d 373, 381 (1980).

In summary, although plaintiffs believe their wage deduction claims have merit, CGMI has both procedural and substantive defenses to the claims.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT.

As noted previously, the terms of the Settlement are contained in the Stipulation, filed herewith. There are no undisclosed side agreements between the parties and/or their counsel. Clapp declaration, ¶ 3.

Subject to Court approval, the parties have stipulated to class certification of a Settlement Class consisting of all individuals who were employed by CGMI in a "Covered Position"

13

(Financial Advisor, Financial Advisor Associate, Financial Consultant, or Financial Consultant Associate) anywhere in the United States or its territories (including, without limitation, the District of Columbia and Puerto Rico) during the applicable limitations period.  Stipulation, § III(A).  As specified in the Stipulation, the applicable limitations period for each state or territory is the greater of (1) the statute of limitations for wage and hour claims under state law, or (2) the FLSA's three-year statute of limitations for willful violations.  Id.

CGMI has agreed to pay up to $98 million (the "Gross Settlement Value") to settle (1) the timely and valid claims of the class; (2) the fees and costs of claims administration; (3) the fees and costs of the special master; (4) Class Counsel's claims for attorney's fees and litigation expenses (subject to Court approval); and (5) Plaintiffs' claims for enhanced awards (subject to Court approval).  See Stipulation, § IV(A) and (B).  CGMI will deposit the Gross Settlement Value into an interest-bearing account no later than five court days following entry of the Court's order granting preliminary approval. Stipulation, § IV(A).

Subject to Court approval, the parties have stipulated to the appointment of a special master to review the parties' proposed allocation of the settlement proceeds between California on the one hand and the other 49+ states and territories on the other hand, and also to determine a formula for the allocation of settlement proceeds among the non-California states and territories. Stipulation, § VII(C).  The parties will ask the special master to consider any non-binding recommendations of Co-Lead Class Counsel, the applicable law in each jurisdiction, and any other factors deemed appropriate by the special master, and then to issue an independent written recommendation as to a settlement allocation that is fair and reasonable.  Upon receipt of the special master's recommendation, the parties will return to the Court and ask the Court to adopt the special master's findings and recommendation, and authorize the mailing of the class notice. In other words, this review by the special master will occur after preliminary approval but before the mailing of the class notice.  The parties believe that having a special master independently review and make a recommendation regarding the settlement allocation before the class notice is mailed will ease the burden on the Court, will provide putative members of the settling class with more meaningful information, and may head-off potential objections.

14

1   Each class member will receive a "Notice of Class Action Settlement," in the form

2   attached as Exhibit B to the Stipulation ("Class Notice").  The parties will retain the professional

3   claims administration firm of Rust Consulting, Inc. (the "Claims Administrator") to mail the

4   Class Notice and perform other required claims administration services.  Stipulation, § III(D).

5   The Class Notice will describe the litigation, the terms of the Settlement, and each class

6   member's options with regard to the Settlement. Stipulation, Exhibit B.  The Class Notices will

7   be sent, postage pre-paid, via first class mail to the last-known address of each class member.

8   Stipulation, §VIII(C)(1).  Prior to mailing the Class Notices, the Claims Administrator will

9   consult the United States Postal Service's National Change of Address database in an effort to

10   update the class members' addresses.  Id.  To the extent any Class Notice is returned to the

11   Claims Administrator as undeliverable, the Claims Administrator will perform a skip trace and

12   mail the Class Notice and other settlement documents to the new address.  Stipulation, § VIII(D).

13   Class members will have 60 days to return a claim form.  Stipulation, § VIII(E).  Twenty days

14   before the claim-filing deadline, the Claims Administrator will mail out a reminder postcard to

15   the class members who have not yet filed claims.  Stipulation, § VIII(J).  In addition, notice of the

16   Settlement will be published in the Wall Street Journal or similar national publication ordered by

17   the Court.  Stipulation, §VIII(C)(2).

18   As explained in the Class Notice, class members who do not wish to be a part of the

19   Settlement Class may submit an opt-out form.  Those class members who timely opt-out will not

20   receive a settlement payment, but also will not be subject to the release of claims.  Stipulation, §

21   VIII(H).  In addition, class members may also object to the Settlement.  Stipulation, § VIII(I).

22   All class members who do not submit timely opt-out forms will become members of the

23   Settlement Class and, assuming the Settlement is approved by the Court, will be subject to the

24   release of claims.  Stipulation, § 10.  The release covers: (1) all claims alleged in the Actions; (2)

25   any claim for unpaid overtime or missed meal or rest periods based on the Settlement Class

26   members' alleged misclassification as exempt employees while employed in a Covered Position

27   in the United States; (3) any claim for improper deductions from or chargebacks to commissions,

28   wages, or any other payments to the Settlement Class members while employed in a Covered

15

Position in the United States (excluding claims arising from or related to deductions for employee benefits, including without limitation health insurance deductions, 401(K) deductions, deferred compensation deductions, and stock purchase deductions, as well as claims arising from or related to participation in any Capital Accumulation Plan); (4) any claim for failure to reimburse business expenses that were incurred by Settlement Class members while employed in a Covered Position in the United States; and (5) any penalty or additional damages which arise from the claims described in (1) through (4) above under federal or applicable state, local, or territorial law (collectively, the "Released Claims"). Id.

Notwithstanding the foregoing and pursuant to 29 U.S.C. § 216(b), for class members outside the State of California, "Released Claims" does not include claims under the Fair Labor Standards Act unless the class member affirmatively opts-in to the Settlement. Stipulation, § X(C). The Settlement does, however, provide that CGMI has the right to move the Court for an order that non-California class members who do not opt-in to the Settlement waive their right to bring or participate in a subsequent collective action under the FLSA, although such class members still would have the right to pursue their FLSA claims on an individual basis. It is not a condition of the Settlement that the Court grant any such motion by CGMI. Stipulation, § XII(B).

Settlement Class members who submit timely claim forms will receive a settlement payment based on the number of full or partial months they were employed in a Covered Position during the applicable limitations period. Stipulation, § IX. The parties estimate that, following deduction of attorney's fees, expenses, plaintiff enhancements, and costs of claims administration, at least $73 million will remain for distribution to the members of the Settlement Class.

Under the Stipulation, plaintiffs' counsel are entitled to move the Court for an award of attorney's fees of up to 25% of the Gross Settlement Value, which is consistent with the Ninth Circuit benchmark, plus litigation expenses of up to $100,000. Stipulation, § V; Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (holding that the benchmark fee award in common fund cases in the Ninth Circuit is 25% of the fund). CGMI will not oppose any request for fees and expenses up to these amounts. Stipulation, § V. In addition, plaintiffs' counsel will request enhanced awards for the named plaintiffs in the amount of $25,000

16

1    each to compensate them for the time they spent, and risk they undertook, in bringing the Actions.

2    Stipulation, § VI. All of these amounts are subject to Court approval.

3    **IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.**

4         The policy of the federal courts is to encourage settlement before trial. <u>Franklin v. Kaypro</u>

5    <u>Corp.</u>, 884 F.2d 1222, 1225 (9th Cir. 1989). "Litigation settlements offer parties and their counsel

6    relief from the burdens and uncertainties inherent in trial . . . . The economics of litigation are

7    such that pretrial settlement may be more advantageous for both sides than expending the time

8    and resources inevitably consumed in the trial process." <u>Id.</u>

9         In class action cases, the district court must approve any settlement of class claims. Fed.

10    R. Civ. P. 23(e). As explained in the <u>Manual for Complex Litigation, Third</u>, court approval of a

11    class action settlement is a two-step process:

12
13
14
15
16        First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation . . . . If the preliminary evaluation of the proposed settlement does not disclose ground to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of Plaintiffs or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. <u>Id.</u>, § 30.41, pp. 236-37.

17    Thus, preliminary approval should be granted if the proposed settlement falls "within the range of

18    possible final approval." <u>Id</u>; <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Conte &

19    Newberg, <u>Newberg on Class Actions</u> (4th Ed. 2002), § 11.25 at pp. 38-39. Stated another way,

20    preliminary approval is "a determination that there is what might be termed 'probable cause' to

21    submit the proposal to class members and hold a full-scale hearing as to its fairness." <u>In re</u>

22    <u>Traffic Executive Association-Eastern Railroads</u>, 627 F.2d 631, 634 (2nd Cir. 1980).

23    Furthermore, a proposed settlement is presumed to be fair when (1) it is reached through arm's-

24    length negotiations, (2) the putative class is represented by experienced counsel, and (3) the

25    parties have conducted sufficient discovery. <u>Manual for Complex Litigation, Third</u>, § 30.42, p.

26    240; <u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d 96, 116 (2nd Cir. 2005).

27         Here, all of the factors giving rise to a presumption of fairness exist. First, the proposed

28    settlement was the product of arm's-length, non-collusive negotiations, overseen by two well-

17

respected mediators. Clapp declaration, ¶ 4. Second, as described in the declarations of James F. Clapp and Jeffrey G. Smith, filed herewith, plaintiffs are represented by experienced counsel. Clapp declaration, ¶ 2; Smith declaration. Third, the parties exchanged a significant amount of information in connection with their settlement negotiations. Plaintiffs' counsel reviewed over 3,000 pages of policy manuals, training materials, and compensation plans provided by CGMI. Furthermore, plaintiffs' counsel interviewed more than 100 current and former Financial Advisors about their work hours, job duties, compensation, and business expenses incurred. In addition, prior to the mediations, CGMI provided plaintiffs' counsel with detailed payroll information regarding the entire class. Both sides have sufficient familiarity with the facts of the case to make an informed recommendation about the fairness of the Settlement. Clapp declaration, ¶ 5.

Finally, the Settlement is reasonable. Plaintiffs' counsel believe that it is appropriate to give a substantial discount from the maximum potential exposure in light of: (1) the Department of Labor's November 27, 2006 opinion letter; (2) the uncertainties in the state wage deduction laws, discussed above; and (3) the possibility that plaintiffs may not be able to maintain a certified class through trial. Clapp declaration, ¶ 6. Nevertheless, at $98 million, this is still larger than other wage and hour settlements reached on behalf of Financial Advisors in the United States, namely, the settlements recently approved by Judge Chesney on behalf of UBS' Financial Advisors ($44 million to California Financial Advisors and $45 million to Financial Advisors outside of California, for a total of $89 million). Clapp declaration, ¶ 6.

## V.    THE COURT SHOULD APPROVE THE SETTLEMENT ALTHOUGH ONE NAMED PLAINTIFF DOES NOT FULLY SUPPORT IT.

There are sixteen named plaintiffs in the Actions. Only one of the named plaintiffs, Guita Bahramipour, does not fully support the Settlement. Ms. Bahramipour agrees that the amount of the Settlement is fair and reasonable. However, Ms. Bahramipour is concerned that CGMI has attempted to make up the cost of the Settlement by cutting the commission payout to CGMI's current Financial Advisors. Clapp declaration, ¶ 8.

1    CGMI adamantly denies Ms. Bahramipour's allegation.   Although CGMI has, in fact,

2  made numerous changes to its compensation plan for 2007, those changes, when considered in

3  the aggregate, are projected to result in a substantial financial <u>benefit</u> to the group of CGMI's

4  current Financial Advisors as a whole.   <u>See</u> Declaration of W. William Brab, ¶¶ 2-5, filed

5  herewith.   There is no merit to Ms. Bahramipour's concern that CGMI has attempted to pay for

6  the cost of the Settlement by cutting commission payouts.   In fact, although there have been some

7  reductions in commission payouts, those reductions are more than offset by compensation

8  enhancements that were implemented for CGMI's Financial Advisors at the same time <u>Id.</u> ¶ 4.

9  Any amounts generated by CGMI via changes in commission payouts are <u>not</u> being used to fund

10  the Settlement and are <u>not</u> in retaliation for the Settlement.  <u>Id.</u> ¶ 5.  For their part, plaintiffs'

11  counsel have seen no evidence that CGMI is trying to finance the Settlement through cuts in

12  commissions. Clapp declaration, ¶ 8.

13    As attorneys for the class, plaintiffs' counsel owe a fiduciary duty to the class as a whole.

14  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 960 (9th Cir. 2003); <u>Parker v. Anderson</u>, 667 F.2d 1204, 1211

15  (5th Cir. 1982).  This duty "frequently diverges" from the opinion of the named plaintiff or other

16  objectors.  <u>Walsh v. Great Atlantic & Pacific Tea Co.</u>, 726 F.2d 956, 964 (3rd Cir. 1983).  "The

17  compelling obligation of class counsel in class action litigation is to the group which makes up

18  the class. Counsel must be aware of and motivated by that which is in the maximum best interests

19  of the class considered as a unit." <u>Parker</u> at 1211.  Accordingly, plaintiffs' counsel are authorized

20  to seek – and the Court is authorized to grant – approval of a class action settlement that is in the

21  bests interests of the class, even if one of the named plaintiffs does not fully support the

22  settlement. <u>Id.</u>

23    Here there can be little doubt that the Settlement is in the best interests of the class.  As

24  discussed above, the Department of Labor's November 27, 2006 opinion letter presents an

25  obstacle to plaintiffs' overtime claims; plaintiffs' state wage deduction claims are highly

26  uncertain; and plaintiffs may not be able to maintain class certification through trial.

27  Furthermore, even if Ms. Bahramipour's suspicions were true – and there is no evidence of this –

28  the Settlement only involves claims that arose prior to January 1, 2007.  Stipulation, Section

19

---

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          C-04-04440 CW

1    X(A).  In the opinion of plaintiffs' counsel and the 15 other named plaintiffs, the Settlement is a

2    fair and reasonable compromise of the claims arising prior to that date.  Clapp declaration, ¶ 8.

3    **VI.    CONCLUSION.**

4           For all of the foregoing reasons, the parties respectfully request that the Court: (1)

5    preliminarily approve the Settlement; (2) conditionally certify the class described herein for

6    settlement purposes only; and (3) appoint Judge Legge as special master pursuant to Fed. R. Civ.

7    P. 53(a)(1)(A) to independently review and make recommendations regarding the allocation of

8    settlement proceeds.  Upon receipt of Judge Legge's written recommendation, the parties will

9    return to this Court and ask the Court to: (4) incorporate the allocation into the class notice; (5)

10   authorize the mailing of the notice; and (6) set a final approval hearing.

11

12   Dated: February 16, 2007              DOSTART CLAPP GORDON & COVENEY, LLP

13

14                                         _____/S_____
                                          JAMES F.CLAPP
15                                         Attorneys for Plaintiffs

16   Dated: February 16, 2007              O'MELVENY & MYERS LLP

17

18                                         _____/S/_____
                                          CHRIS A. HOLLINGER
19                                         Attorneys for Defendant

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT          C-04-04440 CW